IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HEADWATERS CONSTRUCTION COMPANY, f/k/a TETON SPRINGS CONSTRUCTION COMPANY, a Wyoming corporation,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL CITY MORTGAGE CO., an Ohio corporation; and DOES 1-X, whose true name(s) are unknown, who have been associated with, employed by, and/or were agents of Defendants,<br><br>Defendants. | Case No. 09-119-E-EJL-REB<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>(Docket No. 21) |

The Court has before it Defendant National City Mortgage Co.'s ("National City") Motion to Dismiss First Amended Complaint (Docket No. 21). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Report and Recommendation:

**PROCEDURAL BACKGROUND**

Plaintiff Headwaters Construction Company ("Headwaters") filed its initial Complaint on January 15, 2009 in the Seventh Judicial District of the State of Idaho, in and for the County of

**REPORT AND RECOMMENDATION- 1**

Teton (Docket No. 1, Att. 3).[1] National City removed the case to this Court on March 13, 2009 (Docket No. 1). On April 10, 2009, National City filed a Motion to Dismiss the Complaint (Docket No. 12). In response, Headwaters filed its First Amended Complaint on May 18, 2009 (Docket No. 16). On May 29, 2009, this Court deemed National City's Motion to Dismiss Headwaters' Complaint moot, requesting that National City respond to Headwaters' First Amended Complaint by June 12, 2009 (Docket No. 19). On June 12, 2009, National City filed the pending Motion to Dismiss (Docket No. 21).

Headwaters' First Amended Complaint alleges the following nine Counts against National City, arising out of loans between National City and a number of construction loan borrowers: (1) Count I: Unjust Enrichment; (2) Count II: Intentional Interference with Contract; (3) Count III: Negligent Interference with Contract; (4) Count IV: Breach of Contract (Assignment); (5) Count V: Breach of Contract (Third-Party Beneficiary); (6) Count VI: Promissory Estoppel; (7) Count VII: Lender Liability; (8) Count VIII: Negligence; and (9) Count IX: Priority of Liens. *See* First Am. Compl., pp. 19-31 (Docket No. 16). National City seeks dismissal of Counts I, III, IV, V, VI, VII, and VIII. *See* Mem. in Supp. of Mot. to Dismiss, p. 1 (Docket No. 22).

On July 6, 2009, Headwaters filed an Opposition to National City's pending Motion to Dismiss (Docket No. 27). The next day, on July 7, 2009, Headwaters also filed its Second Amended Complaint (Docket No. 28); two days later, however, Headwaters withdrew its Second Amended Complaint (Docket No. 29). Regardless, within its Opposition, Headwaters indicates

---

[1] Although filed in the Seventh Judicial District, the caption to Headwaters' Complaint read: "In the United States District Court for the District of Idaho" (Docket No. 1, Att. 3).

**REPORT AND RECOMMENDATION- 2**

that it "does not oppose the dismissal of [Count VI: Promissory Estoppel] without prejudice at this time." *See* Opp. to Mot. to Dismiss, p. 6 (Docket No. 27).

## REPORT

**A.     FRCP 12(b)(6) Standard**

FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). While a complaint attacked by an FRCP 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "[FRCP] 8 marks a notable and generous departure from the hyper-technical,

**REPORT AND RECOMMENDATION- 3**

code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts.").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Simpson*, 452 F.3d at 1046. The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Under FRCP 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without

transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**B.    National City's Motion to Dismiss**

Headwaters concedes dismissal of Count VI of its First Amended Complaint. *See supra* at pp. 2-3. Accordingly, the Court will grant National City's Motion to Dismiss with respect to Headwaters' promissory estoppel claim. National City also seeks dismissal of Counts I, III, IV, V, VII, and VIII. The Court will address each Count below:

1.    <u>Count I: Unjust Enrichment</u>

"A prima facie case of unjust enrichment consists of three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *See* Mem. in Supp. of Mot. to Dismiss, pp. 2-3 (Docket No. 22) (citing *Vanderford Co., Inc. v. Knudson*, 165 P.3d 251, 272 (Idaho 2007)).

Within its Motion to Dismiss, National City seems to raise two distinct arguments. First, National City claims that it does not own each of the ten properties referenced in Headwaters' First Amended Complaint and, therefore, could not have received the requisite benefit(s) to support an unjust enrichment claim. *See id.* at pp. 3-4 ("For purposes of a motion to dismiss pursuant to FRCP 12(b)(6), Headwaters must at least allege a benefit conferred on National City,

**REPORT AND RECOMMENDATION- 5**

rather than merely speculate as to a potential future benefit."). Second, National City claims that Headwaters failed to exhaust its remedies against the borrowers before seeking recovery from National City itself. *See id*. at p. 4 ("Because Headwaters seeks to use the theory of unjust enrichment to collect from National City amounts owed by the [b]orrowers under their construction contracts, prior to exhausting all its remedies against the [b]orrowers, the Court should dismiss Headwaters' claim for unjust enrichment in its entirety.").

The Court agrees that, in not alleging ownership of all ten properties, Headwaters' unjust enrichment claim is compromised. Indeed, Headwaters' First Amended Complaint clearly states that only two of the ten properties are actually *owned* by National City:

> National City foreclosed and became the owner of the Gonzales house on February 3, 2009 and the Kosowicz house on April 7, 2009. National City has noticed trustee sales for the Vasquez house on June 11, 2009, the Beccerra house on June 16, 2009, the Russell house on June 16, 2009, and the Wang house on September 9, 2009, the Makmuri house on July 23, 2009, and the Wang house on September 9, 2009.

*See* First Am. Compl., pp. 19-20, ¶ 126 (Docket No. 16); *see also id*. at p. 20, ¶ 127 ("Based upon recent trustee sales for houses in the Teton Springs development in Victor, Idaho, almost all of which have produced no bidders, Headwaters *expects* that National City will credit bid and take ownership of the houses described herein." (Emphasis added)). Contemplated ownership and, likewise, anticipated benefit is not enough to suggest a conferred benefit upon National City as to eight of the above-referenced properties. Still, Headwaters adequately alleges National City's ownership of two properties - the Gonzales and Kosowicz houses. *See id*. at ¶ 126.

Other than disputing the allegation itself (*see* Mem. in Supp. of Mot. to Dismiss, p. 3, n. 1 (Docket No. 22)), National City offers no argument that, as to these two discrete properties,

**REPORT AND RECOMMENDATION- 6**

Headwaters asserts a conferred benefit upon National City. *See id.* at p. 4 ("Because National City does not own eight of the ten properties improved by Headwaters, and Headwaters fails to allege any other benefit conferred on National City, Headwaters' Complaint fails to state a claim for unjust enrichment *as to those eight properties*." (Emphasis added)); *see also* Reply in Supp. of Mot. to Dismiss, p. 3 (Docket No. 30) ("Because Headwaters fails to plead National City received any benefit for at least eight of the ten homes, Headwaters['] First Amended Complaint fails to state a claim for Unjust Enrichment *as to those properties*." (Emphasis added)). It would seem, then, that Headwaters has alleged a viable claim against National City as to the remaining two properties.

Except, as National City points out, Headwaters must first exhaust its remedies against the borrowers themselves before pursuing an unjust enrichment claim against National City. *See* Mem. in Supp. of Mot. to Dismiss, p. 4 (Docket No. 22) (citing *Idaho Lumber v. Buck*, 109 Idaho 737, 745 (Idaho Ct. App. 1985)). In *Idaho Lumber*, the Idaho Court of Appeals suggested that, "'before recovery can be had against the landowner on an unjust enrichment theory, the furnisher of the materials and labor must have exhausted his remedies against the person with whom he had contracted, and still has not received the reasonable valuable of his services.'" *See Idaho Lumber*, 109 Idaho at 655 (quoting *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 155 (Tenn. 1966)).

Here, Headwaters essentially concedes that it has not fully exhausted its remedies against the borrowers - the individuals with whom it had contracted.[2] Instead, Headwaters

---

[2] In *Idaho Lumber*, the borrower filed for bankruptcy and obtained a discharge of his debt as to the plaintiff-contractor. *See Idaho Lumber*, 109 Idaho at 649.

**REPORT AND RECOMMENDATION- 7**

acknowledges that it is currently pursuing claims against the borrowers in separate litigation. *See* Opp. to Mot. to Dismiss, p. 3 (Docket No. 27) ("In addition, Headwaters has pursued its claims against the borrowers in other litigation pending before this Court . . . ."). Headwaters' suggestion that it "has not and will not seek a double[-]recovery of its damages from Nat[ional] City and the borrowers" (*see id*. at p. 4) is insufficient. Headwaters offers no legal support endorsing its argument; moreover, Headwaters' speculation that it would be a "miracle" if it recovers anything from the borrowers (*see id*.) does not change the requirement that it exhaust its remedies with the borrowers before pursuing claims against National City.

Therefore, at this point, the Court should grant National City's Motion to Dismiss as to Headwaters' unjust enrichment claim. Count I should be dismissed without prejudice.

2. <u>Count IV:[3] Breach of Contract (Assignment)</u>

Headwaters' First Amended Complaint alleges that the borrowers assigned their interests in the construction contracts to National City and that National City breached those contracts by then "failing and refusing to pay the final draws for construction of each of the houses to Headwaters." *See* First Am. Compl., p. 24, ¶¶ 156-158 (Docket No. 16). However, as noted by National City, nowhere in Headwaters' First Amended Complaint does it allege that National City assumed any obligations under any construction contract. *See* Opp. to Mot. to Dismiss, p. 5 (Docket No. 27). "A transferee of property or contract rights is not personally liable for third party claims affecting the property or arising from acts of the transferor, in the absence of proof that the transferee assumed and agreed to pay such obligations. " *See Murr v. Selag Corp.*, 113

---

[3] Count III: Negligent Interference with Contract and Count VIII: Negligence are addressed together within this Report and Recommendation (*see infra* at pp. 13-14).

**REPORT AND RECOMMENDATION- 8**

Idaho 773, 780 (Idaho Ct. App. 1987) (citing *Llundt v. Carothers*, 96 Idaho 782 (Idaho 1975); *Hinckley Estate Co. v. Gurry*, 53 Idaho 551 (Idaho 1929)).[4]

In its response brief, Headwaters essentially concedes as much, but argues that it has now made the proper allegations in its Second Amended Complaint. *See* Opp. to Mot. to Dismiss, p. 4 (Docket No. 27) ("Nat[ional] City's argument to dismiss Count IV is that Headwaters has not alleged that Nat[ional] City assumed obligations under the construction contracts. Headwaters has amended its complaint to allege that Nat[ional] City assumed such obligations."). However, Headwaters withdrew its Second Amended Complaint on July 9, 2009; in other words, the Court cannot consider the allegations in a non-existent pleading. *See supra* at p. 2. Therefore, Headwaters fails to allege that National City assumed any obligation under the contracts and, as a result, the Court should grant National City's Motion to Dismiss as to Headwaters' breach of contract (assignment) claim. Count IV should be dismissed without prejudice.

3. <u>Count V: Breach of Contract (Third-Party Beneficiary)</u>

"When a contract is made expressly for the benefit of a third person, the contract may be enforced by the third person at any time before the parties to the contract rescind it." *See*

---

[4] The Idaho Court of Appeals went on to state:

> An assignee's assumption of an assignor's liabilities is never presumed, and the burden of proof is upon the party who asserts that there has been an assumption. The court will refuse to hold a grantee liable for his grantor's obligations unless the alleged proof of assumption is "clear and unequivocal."

*See Murr*, 113 Idaho at 780 (internal citations omitted); *see also Chambers v. Thomas*, 123 Idaho 69, 71 (Idaho 1992) ("Idaho courts will not presume an obligation from the fact of an assignment. Instead, the party asserting such a personal obligation must prove the existence of an express assumption by clear and unequivocal proof.").

**REPORT AND RECOMMENDATION- 9**

*Partout v. Harper*, 145 Idaho 683, 687 (Idaho 2008). Idaho law requires, as an element of a third-party beneficiary claim, identification of a written contract and the terms showing the contracting parties' intent to directly benefit the third party. *Id*. (Internal citations omitted). "The third party must show the contract was made primarily for his benefit; it is not sufficient that the third party is a mere incidental beneficiary to the contract." *Id*. (Internal citations omitted). In these respects, "[t]he intent to benefit the third party must be expressed in the contract itself." *Id*. (Internal citations omitted).

Here, Headwaters alleges that National City entered into written contracts with the borrowers, and that National City provided the funding agreements to both Headwaters and all of the borrowers setting forth the payment draw procedures. *See* First Am. Compl., p. 25, ¶¶ 162 & 164 (Docket No. 16). Specific to its third-party beneficiary claim, Headwaters further alleges that "[t]hese agreements and the loan agreements reflect the parties' intent to benefit Headwaters" and "Headwaters was a known and intended beneficiary of the loans from National City to the borrowers and of the agreements thereto." *See id*. at ¶¶ 164 & 165.

Despite these allegations, National City argues that Headwaters' third-party beneficiary claim must fail because Headwaters (1) fails to attach any documentation evidencing the at-issue loans which it claims to be a third-party beneficiary; (2) fails to identify the express contract terms demonstrating that Headwaters is an intended third-party beneficiary; and (3) fails to allege that the relevant contracts were fully enforceable and not in breach by the borrowers at the time the final draws were requested. *See* Mem. in Supp. of Mot. to Dismiss, pp. 5-7 (Docket No. 22). The Court disagrees.

At this stage of the litigation, Headwaters is not obligated to attach the particular contracts supporting its breach of contract claims, nor must it *prove* its third-party beneficiary

**REPORT AND RECOMMENDATION- 10**

claim as National City suggests it must do. In *Partout* (*see supra* at pp. 9-10), cited favorably by National City, the Idaho Supreme Court rejected the plaintiff's third-party beneficiary claim on summary judgment *after* it specifically acknowledged the existence of such a claim given Idaho's endorsement of notice pleadings, stating:

> Partout's complaint sets forth breach of contract as the first cause of action. . . . . That section of the complaint focuses on Breuer's written disclosure statement and makes no mention of third-party beneficiary theory. However, Partout does make the following factual allegations in his complaint: . . .
>
> Plaintiff is a third party beneficiary of the contract between Harper and the Lender . . . .
>
> In the complaint Partout specifically alleges a breach of contract claim against Harper. This claim is supported by factual averments in the complaint alleging the existence of a contract between Harper and the VA, and that Partout is a third-party beneficiary to that contract. Additionally, in this case it is clear the complaint put Harper on notice since in his answer he explicitly alleges Partout is not a third-party beneficiary to his contract with the VA. Therefore, we hold the complaint can be fairly viewed to have provided Harper adequate notice of Partout's breach of contract claim based on third-party beneficiary theory, and thus, it was an issue to be considered on summary judgment.

*See Partout*, 145 Idaho at 687. Headwaters' similar allegations here (indeed, identified by an altogether separate cause of action, in contrast to the plaintiff's claim in *Partout*) are sufficient to overcome National City's challenge at this time. This finding is not an implicit blessing by the Court as to the merits of Headwaters' claim but, rather, a mere finding that Headwaters has stated a claim - however questionable it may be. Going forward, Headwaters must address National City's arguments and, ultimately, *establish* the essential elements of its third-party beneficiary claim, lest it risk that claim's later dismissal on summary judgment like *Partout*. In

**REPORT AND RECOMMENDATION- 11**

the meantime, however, the Court should deny National City's Motion to Dismiss as to Headwaters' breach of contract (third-party beneficiary) claim.

    4.    <u>Count VII: Lender Liability</u>

As noted by National City, no Idaho court has ever recognized a specific claim for "lender liability." *See* Mem. in Supp. of Mot. to Dismiss, pp. 8-9 (Docket No. 22). National City therefore contends that Headwaters' lender liability claim should be dismissed because it does not/cannot state a cause of action. *See id.* at p. 10.

In response, Headwaters seems to concede that its lender liability claim may not be a recognized cause of action under Idaho law. *See* Opp. to Mot. to Dismiss, p. 6 (Docket No. 27) ("Headwaters acknowledges that a lender liability claim/fiduciary relationship may not have yet been explicitly recognized under identical circumstances, but in the wake of the recent mortgage crisis, the bounds of lender liability have been continually expanding."). Yet, Headwaters asks the parties (and this Court) to "speculate what claims an Idaho Court might acknowledge in the current local and economic conditions." *See id.*

The standard for considering a defendant's motion to dismiss is not whether this Court can or "cannot rule out the possibility that Idaho courts might now recognize such a claim" as Headwaters argues. *See id.*; *see also supra* at pp. 3-5. Not only has Idaho not adopted a lender liability claim, to the extent Headwaters is asserting a breach of fiduciary duty claim instead, Idaho has rejected its application to the circumstances alleged here. *See* Mem. in Supp. of Mot. to Dismiss, p. 9 (Docket No. 22) (citing *Idaho First Nat'l Bank v. Bliss Foods, Inc.*, 121 Idaho 266 (Idaho 1991); *Black Canyon Racquetball Club Inc. v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171 (Idaho 1991)). Under these circumstances, the Court finds that Headwaters has not

asserted sufficient allegations to allege a claim for relief and, therefore, recommends that National City's Motion to Dismiss as to Headwaters' lender liability cause of action be granted. Count VII should be dismissed without prejudice.

     5. <u>Count III: Negligent Interference with Contract and Count VIII: Negligence</u>

"The elements of a common law negligence action are (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *See Black Canyon*, 119 Idaho at pp.175-76. To support its claims for both negligent inference with contract and negligence, Headwaters alleges that "National City had a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to Headwaters." *See* First Am. Compl., pp. 23 & 30, ¶¶ 149 & 202 (Docket No. 16).

National City disagrees, arguing that such generalized assertions of duty do not exist within a typical borrower/lender relationship. *See* Mem. in Supp. of Mot. to Dismiss, pp. 11-12 (Docket No. 22). Headwaters ignores the specific context giving rise to its claims, stating only that "[t]hese Counts are general negligence claims that do not require allegations of any specific relationship or duty between the parties." *See* Opp. to Mot. to Dismiss, p. 6 ("Instead, they are based upon the duty of care that all individuals and entities owe to others to prevent foreseeable harm.").

However, as recognized above, the problem for Headwaters is the existence of a duty recognized by law to this situation. *See supra* at p. 13. Here, Headwaters offers nothing except a generic duty not to cause harm; but courts are reluctant to find such a duty in a borrower/lender relationship, let alone one involving an alleged third-party beneficiary. More to the point, it

**REPORT AND RECOMMENDATION- 13**

cannot be said that a lender owes a duty of care to a borrower/third-party when its involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. Liability to a borrower for a claim sounding in negligence arises only when the lender actively participates in the transaction beyond the domain of the usual money lender. Headwaters has not offered any such allegations. Further, Headwaters disregards the fact that a lender is under no duty to ensure the success of the borrower's investment; instead, a lender's attempt to determine a borrower's creditworthiness and ability to repay are for the lender's protection - not necessarily the borrower's or any other third-party.

Therefore, the Court finds that Headwaters' allegations specific to its negligence-related claims are not supported by a recognized duty that can be extended to and breached by National City. Without a duty, National City's Motion to Dismiss as to Headwaters' negligent interference with contract and negligence claims should be granted.[5] Counts III and VIII should be dismissed without prejudice.

## RECOMMENDATION

In accordance with the foregoing Report, the Court RECOMMENDS that National City's Motion to Dismiss First Amended Complaint (Docket No. 21) be GRANTED in part and DENIED in part as follows:

---

[5] During oral argument, National City argued that the Idaho Supreme Court's recent discussion surrounding the economic loss rule in *Aardema v. U.S. Dairy Systems, Inc.*, 2009 WL 2581373 (Idaho 2009), provides additional support to dismiss Headwaters' negligence claims. Because these claims are deficient for reasons independent of the economic loss rule, and given that neither party's briefing addressed the economic loss rule's applicability here, the Court will not now discuss its effect on Headwaters' negligent interference with contract and negligence claims.

**REPORT AND RECOMMENDATION- 14**

1. National City's Motion to Dismiss as to Count I: Unjust Enrichment should be GRANTED. Count I should be dismissed without prejudice;

2. National City's Motion to Dismiss as to Count III: Negligent Interference with Contract should be GRANTED. Count III should be dismissed without prejudice;

3. National City's Motion to Dismiss as to Count IV: Breach of Contract (Assignment) should be GRANTED. Count IV should be dismissed without prejudice;

4. National City's Motion to Dismiss as to Count V: Breach of Contract (Third-Party Beneficiary) should be DENIED.

5. National City's Motion to Dismiss as to Count VI: Promissory Estoppel should be GRANTED. Count VI should be dismissed without prejudice;

6. National City's Motion to Dismiss as to Count VII: Lender Liability should be GRANTED. Count VII should be dismissed without prejudice; and

7. National City's Motion to Dismiss as to Count VIII: Negligence should be GRANTED. Count VIII should be dismissed without prejudice.

DATED: **November 17, 2009**

Honorable Ronald E. Bush
U. S. Magistrate Judge